LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff*
*and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

CATHERINE MONROY, *on behalf of herself*
*and the Class*

               Plaintiff,

    v.

RENATO'S PASTRY & TRATTORIA VENTO LLC
     d/b/a RENATO'S PASTRY SHOPPE
     d/b/a RENATO'S TRATTORIA VENTO,
MICHAEL PECCERILLO, and
RICHARD VENTO,

              Defendants.

---

Case No:

**CLASS**
**ACTION COMPLAINT**

**Jury Trial Demanded**

---

Plaintiff CATHERINE MONROY ("Plaintiff" or "Plaintiff MONROY"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class Action Complaint against Defendants RENATO'S PASTRY & TRATTORIA VENTO LLC, d/b/a RENATO'S PASTRY SHOPPE, d/b/a RENATO'S TRATTORIA VENTO ("Corporate Defendant") MICHAEL PECCERILLO and RICHARD VENTO ("Individual Defendants," and together with the Corporate Defendant "Defendants") and states as follows:

<u>**INTRODUCTION**</u>

1.     Plaintiff alleges on behalf of herself and others similarly situated that, pursuant to the New York Labor Law ("NYLL"), she is entitled to recover from Defendants: (1) unpaid

minimum wages, (2) unpaid wages due to time shaving, (3) unpaid overtime premiums, (4) compensation for late payment of wages, (5) statutory penalties, (6) liquidated damages, and (7) attorneys' fees and costs.

2.     Plaintiff alleges on behalf of herself, and others similarly situated that Defendants willfully filed fraudulent information returns regarding Plaintiff and Class members with the Internal Revenue Service ("IRS"), in violation of 26 U.S.C. § 7434.

3.     Plaintiff further alleges on behalf of herself, and others similarly situated, that Defendants breached their contract with Plaintiff and Class members by failing to pay employer payroll taxes for Plaintiff and Class members, as required by the Federal Insurance Contribution Act ("FICA").

4.     Plaintiff also alleges that, in retaining these sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class members.

5.     Plaintiff further alleges that she was deprived of her statutory rights as a result of Defendants' unlawful discriminatory practices under New York State Human Rights Law, New York Executive Law § 292 et seq. ("NYSHRL"), and New York City Human Rights Law, Administrative Code of the City of New York, § 8-107 ("NYCHRL") and brings this action against Defendants to recover (1) compensatory damages, (2) punitive damages, and (3) attorney's fees and costs.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

7.     Venue is proper in the Eastern District pursuant to 28 U.S.C. §1391.

<u>**PARTIES**</u>

8.　Plaintiff MONROY, for all relevant time periods, was a resident of the county of Richmond, New York.

9.　Corporate Defendant RENATO'S PASTRY & TRATTORIA VENTO LLC is a domestic limited liability company organized under the laws of the State of New York, with an address for service of process located at 676 Forest Avenue, Staten Island, New York 10310. Corporate Defendant RENATO'S PASTRY & TRATTORIA VENTO LLC is the corporate entity which operates Corporate Defendants RENATO'S PASTRY SHOPPE and RENATO'S TRATTORIA VENTO. *See* **Exhibit A**.

10.　Defendants operate two restaurants through Corporate Defendant RENATO'S PASTRY & TRATTORIA VENTO LLC:

      (a) RENATO'S PASTRY SHOPPE, located at 1646 Forest Avenue, Staten Island, New York 10302; and

      (b) RENATO'S TRATTORIA VENTO, located at 676 Forest Avenue, Staten Island, New York 10310.

11.　At all relevant times, Defendants RENATO'S PASTRY & TRATTORIA VENTO LLC, RENATO'S PASTRY SHOPPE and RENATO'S TRATTORIA VENTO were and continue to be an "enterprise engaged in commerce" within the meaning of FLSA.

12.　Defendants' RENATO'S PASTRY SHOPPE and RENATO'S TRATTORIA VENTO (the "Restaurants") are operated as a common enterprise through RENATO'S PASTRY & TRATTORIA VENTO LLC.

13.     The Restaurants are commonly owned by Defendants and advertised on the same Facebook page: https://www.facebook.com/renatospastryandtrattoriavento/. Attached hereto as **Exhibit B**.

14.     Specifically, the Restaurants RENATO'S PASTRY SHOPPE and RENATO'S TRATTORIA VENTO are engaged in related activities, share common ownership, and have a common business purpose:

(a) The Restaurants use the same Facebook page for promotional advertising;

(b) Employees are interchangeable among the Restaurants, and in fact, Plaintiff interviewed and began working at RENATO'S TRATTORIA VENTO, but was later transferred to RENATO'S PASTRY SHOPPE. Subsequently she was required to perform work at both Restaurants on an as needed basis;

(c) The Restaurants have common management in that both are managed by Individual Defendants MICHAEL PECCERILLO, and RICHARD VENTO, who also supervise employees;

(d) The Restaurants share a single payroll method and have a single centralized system of labor relations for employees. This is demonstrated by the fact that in order for Plaintiff to be paid, she must text her hours to the owners, regardless of which location she worked at, and Defendants would provide her with a single payment.

15.     Individual Defendant MICHAEL PECCERILLO is the owner of Corporate Defendants. Individual Defendant MICHAEL PECCERILLO exercises operational control as it relates to all employees including Plaintiff MONROY and the Class. Defendant MICHAEL PECCERILLO frequently visits the two locations. He exercises—and also delegates to managers

and supervisors—the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment, including those of Plaintiff MONROY. At all relevant times, employees of the Corporate Defendants could complain to Defendant MICHAEL PECCERILLO directly regarding any of the terms of their employment, and Defendant MICHAEL PECCERILLO would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedules, compensation, terminating or hiring such employees. Defendant MICHAEL PECCERILLO had the power and authority to supervise and control supervisors of Plaintiff MONROY and Class members, and could reprimand employees.

16.     Individual Defendant RICHARD VENTO is the owner of Corporate Defendants. Individual Defendant RICHARD VENTO exercises operational control as it relates to all employees including Plaintiff MONROY and the Class. Defendant RICHARD VENTO frequently visits the two locations. He exercises—and also delegates to managers and supervisors—the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment, including those of Plaintiff MONROY. At all relevant times, employees of the Corporate Defendants could complain to Defendant RICHARD VENTO directly regarding any of the terms of their employment, and Defendant RICHARD VENETO would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedules, compensation, terminating or hiring such employees. Defendant RICHARD VENTO had the power and authority to supervise and control supervisors of Plaintiff MONROY and Class members, and could reprimand employees.

17.     At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of NYLL and the Regulations thereunder.

18.     At all relevant times, the work performed by Plaintiff MONROY and Class members, was directly essential to the business operated by Defendants.

19.     At all relevant times, Defendants employed at least eleven (15) employees within the meaning of NYLL.

20.     At all relevant times, Defendants were Plaintiff's and Class members' employer within the meaning of New York Labor Law §§ 2 and 651.

21.     At all relevant times, Plaintiff and Class members were Defendants' employees within the meaning of New York Labor Law §§ 2 and 651.

22.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## CLASS ACTION ALLEGATIONS

23.     Pursuant to Article 9 of the New York Civil Practice Law and Rules, Plaintiff brings this section as a class action, on behalf of all non-exempt employees (including delivery persons, servers, cashiers, runners, bussers, waiters, cooks, bakers, food preparers, and dishwashers), employed by Defendants on or after the date that is six years before the filing of the Complaint (the "Class Period").

24.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.

25.     The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

26.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, including (i) failing to pay proper wages for all hours worked, including overtime premium at one-and-one-half times the regular rate for all hours worked over forty (40) hours, due to an illegal policy of time-shaving, (ii) late payment of wayges, (iii) failing to provide wage statements in compliance with the New York Labor Law, and (iv) failing to provide wage and hour notices upon hiring and as required thereafter, pursuant to the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

27.     Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

28.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and

competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

29.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

30.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect

retaliation. Former employees are fearful of bringing claims because doing so can harm their current employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

31. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a. Whether Defendants employed Plaintiff and Class members within the meaning of NYLL;

b. What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c. At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d. Whether Defendants properly notified Plaintiffs and the Class members of their hourly rate and overtime rate;

e. Whether Defendants properly compensated Plaintiff and Class members for all hours worked;

f. Whether Defendants engaged in time-shaving practices by paying Plaintiff and Class members for scheduled hours only;

g. Whether Defendants paid Plaintiffs and Class members overtime premium at one-and-one-half times their straight time base hourly rates for all hours worked in excess of forty (40) each workweek;

h. Whether Defendants required Plaintiffs and Class members to perform unpaid off-the-clock work;

i. Whether Defendants paid Plaintiff and Class members their lawful wages in a timely manner;

j. Whether Defendants provided proper wage statements informing employees of information required to be provided on wage statements as required under NYLL and applicable state laws; and

k. Whether Defendants provided proper wage and hour notice to employees, including, among others, the rate of compensation, trade name of employer, pursuant to the requirements of NYLL and applicable state laws.

## STATEMENT OF FACTS

32. Plaintiff MONROY was employed by Defendants from in or about September 2020 through January 4, 2022. She was initially hired by Defendants to work as a cashier for RENATO'S TRATTORIA VENTO, located at 676 Forest Avenue, Staten Island, New York, New York 10310. Plaintiff's duties included working at the counter, assisting customers with purchase, and cleaning the restaurant.

33. After her date of hire, Plaintiff MONROY was sent to work at RENATO'S PASTRY SHOPPE, also as a cashier, and worked at either of the two locations as needed. During Plaintiff's employment, Defendants interchanged Class members between the two locations as needed to bring supplies to and from both locations.

34. From the start of Plaintiff's employment in September 2020 until November 2020, Plaintiff was paid $12 per hour, which was below the minimum wage rate. Thereafter from November 2020 until the end of her employment, Plaintiff was paid $15 per hour. Plaintiff was

always paid in cash and never received paystubs from Defendants. Based on her personal observations, Plaintiff knows that other nonexempt employees were also paid exclusively in cash and did not receive paystubs.

35. As a result of this policy, Defendants failed to provide Plaintiff and Class members with accurate IRS Forms W-2 for all the tax years of their employment and failed to properly record, account for, and report to the IRS all monies paid to Plaintiff and Class members. In failing to account for these monies in their IRS filings, Defendants filed fraudulent information in violation of 26 U.S.C. § 7434. Under 26 U.S.C. § 7434(b), Defendants are liable for at least $5000 to each Class member for each fraudulent filing, which would have to be at least once a year.

36. In violating the Internal Revenue Code by failing to provide proper W-2 forms, Defendants also breached their contract with Plaintiff and Class members to pay the employer's share of Social Security and Medicare taxes for each employee.

37. Defendants also unjustly enriched themselves at the expense of Plaintiff and Class members by retaining monies that should have been remitted to the IRS on Plaintiff's and Class members' behalf.

38. As a result, Plaintiff and Class members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

39. The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff and each Class member 7.65% of all their earnings from Defendants beginning six (6) years prior to the filing of this Complaint.

40.     Defendants are liable to Plaintiff and Class members for failing to pay FICA taxes on the cash portion of the wages earned by Plaintiff and Class members.

41.     On a regular basis, Defendants also failed to timely pay Plaintiff her cash wages. For example, Plaintiff regularly did not receive her cash wages within seven (7) days of the end of the week in which Plaintiff earned them, in violation of NYLL § 191(1)(a)(i)[1]. From her observations and conversations with co-workers, Plaintiff knows that Class members similarly did not receive their cash wages within seven (7) days during the week in which they were earned, because it was a common policy of Defendants. Therefore, Plaintiff and Class Members are owed liquidated damages equal to the late payment of wages and accrued interest on the delayed payments.

42.     During the entire duration of Plaintiff's employment, she was scheduled to work from Monday through Friday from 8:00 a.m. to 2:00 p.m., for a total of thirty (30) hours per week. On an almost daily basis, Plaintiff was required to continue working past her scheduled shift up to an additional two (2) hours each day, on an as needed basis. From her observations, Class members were similarly required to continue working beyond their scheduled shifts each day.

43.     Defendants never required Plaintiff to clock in or out for the hours she worked. Instead, Plaintiff was required to write down her hours and send them to Defendants via text message in order to be paid. However, Defendants never paid Plaintiff for all the hours she worked, and when Plaintiff worked in excess of forty (40) hours in a workweek, Defendants failed to pay Plaintiff her overtime premium. Similarly, from her observations and conversations with co-

---

[1] See *Vega v. CM & Assoc. Constr. Mgmt., LLC*, 2019 NY Slip Op 06459, ¶¶ 1-2, 175 A.D.3d 1144, 1145-46, 107 N.Y.S.3d 286, 287-88 (App. Div. 1st Dept.)

workers, Plaintiff knows that Class members were not required to clock in, and were therefore not paid for all hours worked, including those over forty (40) hours in a workweek.

44. Throughout Plaintiff's employment, even on the days when Plaintiff was required to work additional hours, Defendants only paid her for her schedule shift, due to a policy of time shaving. Alternatively, when Plaintiff was paid for hours beyond her scheduled shift, Defendants always rounded Plaintiff's time to the nearest whole hours. For example, when Plaintiff worked from 8:00 a.m. to 4:20 p.m., Defendants only paid Plaintiff until 4:00 p.m. Defendants similarly rounded Class members' time to the nearest whole hour, due to a policy of time-shaving.

45. Plaintiff MONROY ultimately quit Defendants' employ on January 4, 2022, after one of the owners and Individual Defendant, MICHAEL PECCERILLO, grabbed Plaintiff's buttocks in an unwanted and inappropriate sexual manner.

46. During her employment, Defendants created and maintained a hostile work environment on the basis of Plaintiff's sex, by creating a hypersexualized atmosphere which caused Plaintiff great distress and anxiety.

47. At Defendants' RENATO'S PASTRY SHOPPE, there were only females working in the front of the store.

48. On an almost regular basis, owner, and Individual Defendant MICHAEL PECCERILLO, would walk into the store and say: "Sup Bitches! …" "Which one of you bitches is going to get me my coffee?" Plaintiff was often the one who this was directed toward, and she had to get his coffee. This language made Plaintiff extremely uncomfortable.

49. Defendants maintained the hostile work environment continued in other forms as well. For example, the cash register where Plaintiff worked at RENATO'S PASTRY SHOPPE is

a very small area. Whenever owner MICHAEL PECCERILLO passed by, he would rub his genitals on Plaintiff's buttocks, and say "Sorry, it's just too tight here."

50. Other instances of the hostile work environment that Plaintiff suffered while employed by Defendants included numerous comments of a sexual nature that MICHAEL PECCERILLO made toward Plaintiff.

51. Examples of these comments included Defendant MICHAEL PECCERILLO asking Plaintiff whether icing on a candy apple "looked like sperm;" telling Plaintiff "You've been a very bad girl; I just want to bend you over and spank you;" and when Plaintiff would complete a task and ask Defendant MICHAEL PECCERILLO what else he wanted her to do, he would often reply: "Now you need to service and take care of me." Plaintiff usually would ignore these comments and walk away but once she talked back and said "No," and Defendant MICHAEL PECCERILLO responded violently: "Go do you mother, bitch!"

52. On one occasion, Defendant MICHAEL PECCERILLO taunted Plaintiff in front of other employees of RENATO'S PASTRY SHOPPE by describing gingerbread man pastries in a sexual and derogatory manner as "man bags" and exclaiming: "Man bag, man bag, Catherine loves my man bags." Thereafter, Defendant MICHAEL PECCERILLO would return to this taunting of Plaintiff in front of other store employees and say to Plaintiff: "Hi man bag, how are you? … You love my man bags, don't you?"

53. Defendant MICHAEL PECCERILLO further subjected Plaintiff to a hostile work environment by making fun of Plaintiff and the manner in which she walked after she experienced an injury due to a fall. MICHAEL PECCERILLO would make fun of Plaintiff and say that she "walked like a penguin," and ask, "Did you get fucked too hard?"

54. During Plaintiff's employment, Defendant MICHAEL PECCERILLO behavior and comments made Plaintiff extremely uncomfortable, and she complained to the owners, who were also her supervisors, but nothing ever changed.

55. The last straw was when Defendant MICHAEL PECCERILLO grabbed Plaintiff's buttocks while he was passing by her. Plaintiff immediately complained to Defendant MICHAEL PECCERILLO, and he just walked away and ignored her complaint.

56. Plaintiff asked her co-workers if this was normal, and sadly they told her that it was. Further, Plaintiff's co-workers explained that he had done that to all of the females there despite the fact that they have complained and yelled at him for it.

57. That same day, Plaintiff quit as a result of this hostile work environment. Thereafter, Defendant MICHAEL PECCERILLO called Plaintiff to apologize.

58. Plaintiff suffered anxiety attacks merely thinking about what she endured while employed by Defendants.

59. Defendants failed to provide Plaintiff and Class members with proper wage notices at hiring and annually thereafter, in violation of the NYLL.

60. Plaintiff and Class members were always paid in cash, and Defendants never provided Plaintiff or Class members with wage statements, in violation of NYLL.

61. Defendants knowingly and willfully operated their business with a policy of compensating Plaintiff and Class members below the statutory minimum wage.

62. Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff and Class members for all hours worked due to a policy of time-shaving.

63. Defendants knowingly and willfully operated their business with a policy of not providing employees proper wage statements as required under NYLL.

64.     Defendants failed to provide proper wage notices to employees, at the beginning of employment and annually thereafter, pursuant to the requirements of the NYLL.

65.     Plaintiff MONROY retained Lee Litigation Group, PLLC to represent her and Class members in this matter and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE NEW YORK LABOR LAW

**(Brought individually and on behalf of the Class)**

66.     Claimant MONROY realleges and reavers all the foregoing paragraphs of this Class Action Complaint as if fully set forth herein.

67.     At all relevant times, Plaintiff MONROY and Class members were employed by the Defendants within the meaning of the NYLL, §§2 and 651.

68.     At all relevant times, Defendants engaged in a policy of time-shaving, refusing to compensate Plaintiff MONROY and Class members for all of the hours that she worked each week.

69.     Defendants engaged in a straight-time pay policy, refusing to compensate Plaintiff MONROY and Class members the proper overtime premium for all hours she worked over forty (40) per workweek.

70.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them their wages within seven days of the end of the week in which they were earned, in violation of NYLL § 191(1)(a)(i).

71.     Defendants failed to properly notify employees of their overtime pay rate, in direct violation of NYLL.

72.     Defendants failed to provide a proper wage and hour notice, at the date of hiring and annually thereafter, to all non-exempt employees per requirements of NYLL.

73.     Defendants failed to provide proper wage statements with the correct payment as required by NYLL § 195(3).

74.     Due to Defendants' NYLL violations, Plaintiff MONROY and Class members are entitled to recover from Defendants unpaid wages, resulting from being paid below the statutory minimum wage,  time shaving, including overtime for hours worked over forty (40), unpaid overtime due to Defendants' policy of paying overtime on a straight-time basis, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

## COUNT II

## <u>CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS UNDER 26 U.S.C. § 7434(a)</u>

**(Brought individually and on behalf of the Class)**

75.     Plaintiff realleges all the foregoing paragraphs of this Class Action Complaint as if fully set forth herein.

76.     Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

77.     By failing to provide Plaintiff and Class members with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiff and the Class as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

78. Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code.

79. Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiff for reasonable attorneys' fees.

## COUNT III

## BREACH OF CONTRACT

**(Brought individually and on behalf of the Class)**

80. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class Action Complaint as if fully set forth herein and further alleges as follows:

81. "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co*., 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, *10-11 (2002).

82. When Plaintiff and Class members accepted offers of employment form Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiff and Class members in accordance with all applicable laws. This involved, *inter alia*, a duty by abide by the Internal Revenue Code and pay all required FICA taxes.

83.     Defendants breached this duty when they decided to pay Plaintiff and Class members in cash and not file proper W-2.  As a result, Plaintiff and Class members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf but did not.

## COUNT IV

## UNJUST ENRICHMENT

### (Brought individually and on behalf of the Class)

84.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class Action Complaint as if fully set forth herein and further alleges as follows:

85.     To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516, 973 NE2d 743, 950 NYS2d 333 (2012) (internal quotations omitted).

86.     Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiff and Class members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

87.     Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class members.

## COUNT V

## HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE
## NEW YORK STATE HUMAN RIGHTS LAW

**(New York State Executive Law § 292 *et seq*.)**

88.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class Action Complaint as if fully set forth herein.

89.     The New York State Human Rights Law ("NYSHRL") provides: "It shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." New York State Executive Law § 296(1)(a).

90.     Defendants subjected Plaintiff to a severe and pervasive hostile work environment because of her sex, in violation of NYSHRL.

91.     Defendants' conduct was intentional, malicious and in reckless disregard of Plaintiff's protected rights under NYSHRL.

92.     As a direct and proximate result of Defendants' unlawful acts in violation of NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and relief, including punitive damages and attorney's fees.

## COUNT VI

## HOSTILE WORK ENVIRONMENT IN VIOLATION OF
## NEW YORK CITY HUMAN RIGHTS LAW

93.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class Action

Complaint as if fully set forth herein.

94.     The New York City Human Rights Law ("NYCHRL") prohibits discrimination in

the terms, conditions, and privileges of employment on the basis of sex, providing that

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee
> or agent thereof, because of the actual or perceived age, race, creed, color, national
> origin, gender, disability, marital status, sexual orientation or alienage or
> citizenship status of any person, to refuse to hire or employ or to bar or to discharge
> from employment such person or to discriminate against such person in
> compensation or in terms, conditions or privileges of employment.

The New York City Administrative Code § 8-107(1).

95.     At all relevant times, Defendants had at least four (4) persons in their employ.

Plaintiff was an employee and qualified person within the meaning of NYCHRL and Defendants

are covered employers under NYCHRL.

96.     Defendants operated a business that discriminated against Plaintiff in violation of

NYCHRL by subjecting Plaintiff to a hostile work environment on the basis of her sex.

97.     Under NYCHRL, an employer is liable for the discriminatory conduct by an

employee, agent or independent contractor. NYCHRL provides in relevant part:

> (a) An employer shall be liable for an unlawful discriminatory practice based upon the
> conduct of an employee or agent which is in violation of any provision of this section
> other than subdivisions one and two of this section.
> (b) An employer shall be liable for an unlawful discriminatory practice based upon the
> conduct of an employee or agent which is in violation of subdivision one or two of this
> section only where:
>> (1) the employee or agent exercised managerial or supervisory responsibility; or
>> (2) the employer knew of the employee's or agent's discriminatory conduct, and
>> acquiesced in such conduct or failed to take immediate and appropriate corrective
>> action; an employer shall be deemed to have knowledge of an employee's or

agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

Administrative Code § 8-107(13)

98.     Defendants MICHAEL PECCERILLO, and RICHARD VENTO own both RENATO'S PASTRY SHOPPE and RENATO'S TRATTORIA VENTO, through RENATO'S PASTRY & TRATTORIA VENTO LLC, and were Plaintiff's supervisors.  They had the authority to terminate employees and exercised complete control over employees' working conditions.

99.     Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under NYCHRL.

100.    As a result of Defendants' unlawful employment practice, Plaintiff sustained injury, including but not limited to emotional distress.

101.    Due to Defendants' violations under NYCHRL, Plaintiff is entitled to recover from Defendants: (1) compensatory damages, (2) punitive damages, and (3) attorney's fees and costs.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and Class members, respectfully requests that the Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under NYLL;

b.  A declaratory judgement that the practices complained of herein are unlawful and violated NYSHRL and NYCHRL;

c.   A declaratory judgment that the practices complained of herein are unlawful under 26 U.S.C. § 7434 and that Defendants breached their contract with, and/or unjustly enriched themselves at the expense of, Plaintiff and Class members.

d.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

e.   An award of compensatory damages for Plaintiff's emotional suffering as a result of Defendants' unlawful discriminatory practices, pursuant to NYSHRL and NYCHRL;

f.   An award of punitive damages for Defendants' unlawful discriminatory practices, pursuant to NYSHRL, and NYCHRL;

g.   An award of unpaid minimum wages due under NYLL;

h.   An award of unpaid compensation due under NYLL due to Defendants' policy of time-shaving;

i.   An award of unpaid overtime compensation due under and NYLL;

j.   An award of statutory penalties as a result of Defendants' failure to comply with NYLL wage notice and wage statement requirements;

k.   An award of $5,000 in statutory damages to Plaintiff and each Class member under 26 U.S.C. § 7434;

l.   Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class members' retirement through FICA contributions;

m.   Disgorgement from Defendants of all illegally retained sums that should have gone into FICA contributions;

n.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages and overtime compensation for all hours of work, pursuant to the NYLL;

o.  An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

p.  Designation of this action as a class action pursuant to sections 901 and 902 of the C.P.L.R. for the Class members described herein;

q.  Designation of Plaintiff as Representative of the Class and Plaintiff's Counsel as Class counsel; and

r.  Such other and further relief as this Court deems just and proper.


Dated: March 10, 2022

Respectfully submitted,
By:    /s/ C.K. Lee
        C.K. Lee, Esq.

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*